UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, for use and benefit of KNIFE RIVER CORPORATION – NORTHWEST, an Oregon corporation doing business as Knife River,<br><br>　　Plaintiff,<br><br>　　v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation, and ASCORP, INC., an Idaho corporation doing business as Debco Construction,<br><br>　　Defendants. | Case No. 3:14-cv-00190-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
| ASCROP, INC., an Idaho corporation doing business as Debco Construction,<br><br>　　Counterclaimant,<br><br>　　v.<br><br>KNIFE RIVER CORPORATION – NORTHWEST, an Oregon corporation doing business as Knife River,<br><br>　　Counterdefendant. | |

## INTRODUCTION

The Court has before it Defendant-Counterclaimant's Motion for Extension of Time to File Disputed Material Facts (Dkt. 38), Defendant-Counterclaimant's Motion for Partial Summary Judgment (Dkt. 22), Plaintiff-Counterdefendant's Motion for Partial Summary Judgment (Dkt. 24), Defendant-Counterclaimant's Motion to Amend its Counterclaim (Dkt. 21), Defendant-Counterclaimant's Motion for Spoliation Sanctions (Dkt. 23), and Plaintiff-Counterdefendant's two Motions to Strike (Dkts. 29, 36). The Court will address each motion below.

## BACKGROUND

Debco has worked on highway construction projects with the Federal Highway Administration ("the FHWA") since 2001. *Knife River Undisp. Facts* ¶ 1, Dkt. 24-2. In September 2010, Debco entered into a contract with the FHWA to perform work on the Salmon River Road near Riggins, Idaho. *Compl.* ¶ 7, Dkt. 1. Debco's contract with the FHWA ("the Main Contract") required that all paving on the Salmon River Road be done with asphalt containing 1% lime content. *Main Contract* § 401.01, Dkt. 21-18.

Debco subcontracted paving work on the Salmon River Road to Knife River in May 2013. *Compl.* ¶ 9, Dkt. 1. Debco's contract with Knife River ("the Subcontract") required Knife River to perform "the Subcontract Work in strict accordance with the Main Contract." *Subcontract* at 4, Dkt. 22-47.

Knife River's initial work on the Salmon River Road project lasted from approximately May 17 until June 6, 2013. *Knife River Undisp. Facts* ¶ 25, Dkt. 24-2. But on June 6, 2013, Debco issued Knife River a stop-work order after discovering that Knife River's asphalt mixture contained less than 1% lime. *Answer* ¶ 34, Dkt. 6. The stop-work order remained in effect until June 20, 2013, at which time the FHWA approved a corrective action plan and permitted Knife River to complete its paving work on the Salmon River Road. *Simpson Aff.* ¶ 39, Dkt. 21-2.

Knife River completed its paving work on the Salmon River Road on July 2, 2013. *Id.* ¶ 40. After doing so, Knife River submitted an invoice to Debco seeking payment for the June 6 to June 20 work delay and liquidated damages. *Id.*; *Invoice*, Dkt 21-33. Debco disputed Knife River's invoice, and this lawsuit arose shortly thereafter.

## DISCUSSION

1. **Debco's Motion for Extension of Time**

    The Court first addresses Debco's Motion for Extension of Time to File Disputed Material Facts. Debco asks the Court to excuse the untimely filing of its disputed facts in response to Knife River's Motion for Partial Summary Judgment. Dkts. 37, 38. The Court would have considered denying the motion if Debco's untimely filing had prejudiced Knife River. However, Knife River stipulated to Debco's untimely filing and submitted briefing to address Debco's disputed facts. Dkt. 42. Accordingly, the Court will grant Debco's Motion for Extension of Time to File Disputed Material Facts.

**2.     Motions for Partial Summary Judgment**

A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but instead is the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court must view the evidence in the light most favorable to the non-moving party and must not make credibility findings. *Id.* at 255. However, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence, like affidavits or deposition excerpts, but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

The burden then shifts to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. This requires the non-moving party to go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

### A.   Debco's Motion for Partial Summary Judgment

#### (1)   Breach of Contract

Debco seeks partial summary judgment on its counterclaim for breach of contract, arguing that Knife River breached the Subcontract by failing to ensure the asphalt mixture contained 1% lime. A breach of contract claim consists of four elements: (1) the existence of a contract; (2) a breach of the contract; (3) the breach caused damages; and (4) the amount of those damages. *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 297 P.3d 232, 241 (Idaho Sup. Ct. 2013). The only disputed element the Court need address is whether a breach of the Subcontract occurred.

The parties do not dispute that Debco's Main Contract with the FHWA required the asphalt mixture to contain 1% lime. *Main Contract* § 401.01, Dkt. 21-18. In turn, the Subcontract required Knife River to perform all work in "strict accordance" with the Main Contract. *Subcontract* at 4, Dkt. 22-47. It is also undisputed that Knife River failed to ensure the asphalt mixture contained 1% lime. *Knife River Undisp. Facts* ¶ 28, Dkt. 24-2. Indeed, Knife River's asphalt manager acknowledged that Knife River "did not meet the requirement for lime introduction." *Smith Depo.* at 111, ll. 18-19, Dkt. 21-9.

**MEMORANDUM DECISION AND ORDER - 5**

Though Knife River's failure to perform work in "strict accordance" with the Main Contract is not disputed, Knife River argues that its breach of the Subcontract is nevertheless excused. Knife River contends that Debco breached the Main Contract with the FHWA by failing to perform "the necessary and vital quality control measures" required under the Main Contract's Contractor Quality Control Provision. *Knife River Opp*. at 9, Dkt. 27. Knife River maintains that Debco's breach of the Main Contract excused Knife River's breach of the Subcontract.

Despite Knife River's argument, the undisputed facts demonstrate that Knife River's breach of the Subcontract was not excused for two reasons. First, Knife River was not a party to Debco's Main Contract with the FHWA. Nor has Knife River submitted evidence showing that the FHWA considered Debco to have breached the Main Contract's Quality Control Provision. Second, Knife River has not demonstrated that the Subcontract incorporated the Main Contract's Quality Control Provision. Thus, Knife River cannot rely on the Main Contract's Contractor Quality Control provision to excuse its breach of the Subcontract.

Because the undisputed facts show that Knife River breached the Subcontract, the Court will grant Debco summary judgment on its counterclaim for breach of contract.

    **(2) Forfeiture of Damages Claims**

Debco also seeks summary judgment on its defense that Knife River forfeited its claims for damages. When Knife River submitted its invoice to Debco seeking payment for work delay and liquidated damages, Debco instructed Knife River to certify a claim

with the FHWA in compliance with the Main Contract. *Debco Br.* at 3, Dkt. 22-2; *Knife River Opp.* at 11-12, Dkt. 27. Since Knife River did not certify a claim with the FHWA, Debco contends that Knife River forfeited its claims for damages.

The Court finds questions of fact as to whether the Subcontract required Knife River to certify claims with the FHWA. Based on the limited briefing on this issue, Debco has not met its burden to show that the Subcontract incorporated the Main Contract's dispute resolution procedure. Debco points to General Condition A-1 of the Subcontract, which states that "Subcontractor agrees to be bound to Contractor by all of the terms and provisions of the Main Contract . . . ." *Subcontract* at 7, Dkt. 22-47. But a reasonable jury could find that this provision does not incorporate the Main Contract's dispute resolution procedure. Indeed, General Condition A-1's introductory clause states that it applies only "[w]ith respect to the Subcontract work . . . ." *Id.* Thus, questions of fact exist as to whether General Condition A-1's scope encompasses the Main Contract's dispute resolution procedure.

Questions of fact also surround whether the Dispute T-1(a) provision of the Subcontract incorporated the Main Contract's dispute resolution procedure.[1] Dispute T-1(a) provides:

---

[1] Debco did not raise this provision in its briefing. Nevertheless, the Court addresses it because Lonnie Simpson raised it in his affidavit. *See Simpson Aff.* ¶ 46, Dkt. 22-3.

> In the event that a claim, cause of action, dispute, or other matter in question is asserted by Subcontractor against Contractor but which Contractor, in its sole discretion, asserts is the responsibility of the Owner, the Architect, or their agents or representatives . . . Subcontractor agrees that the dispute shall be resolved in accordance with any and all dispute resolution procedures in the Main Contract . . . .

*Subcontract* at 15, Dkt. 22-47. According to Debco, this provision means that "[a]ny dispute which Knife River had that might have involved the FHWA as owner was to be administered as a 'pass-through claim' under the procedures of the Main FHWA Contract." *Simpson Aff.* ¶ 46, Dkt. 22-3. With no briefing or oral argument on this provision, the Court is not persuaded. Accordingly, the Court finds that reasonable minds could differ as to the construction and the enforceability of the Dispute T-1(a) provision.

For these reasons, the Court will deny summary judgment on Debco's forfeiture of damages claims defense.

### B.     Knife River's Motion for Partial Summary Judgment

Knife River seeks summary judgment on Debco's counterclaim for fraud. Fraud requires: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the [representation]; (8) his rights to rely thereon; (9) his consequent and proximate injury." *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 386 (Idaho Sup. Ct. 2005) (citation omitted). Fraud must be proven by clear and convincing evidence. *Doe v. Boy Scouts of Am.*, 356 P.3d 1049, 1054 (Idaho Sup. Ct. 2015). At summary judgment, then, the question is whether a reasonable jury could find

that clear and convincing evidence supports the claim; if so, summary judgment must be denied. *See Liberty Lobby*, 477 U.S. at 255-56.

Debco's fraud claim rests on Knife River's failure to disclose it was breaching the Subcontract by failing to ensure the asphalt contained 1% lime. *Debco Opp.* at 13, Dkt. 30. "Ordinarily, a breach of contract is not a tort." *Taylor v. Herbold*, 483 P.2d 664, 669 (Idaho Sup. Ct. 1971). "To found an action in tort, there must be a breach of duty apart from the nonperformance of a contract." *Id.* "It can also be said that if a cause of action for breach of a duty based on a contractual promise could also be maintained without the contract by virtue of a statutory or common law duty, then the action is founded upon tort, not contract." *Sumpter v. Holland Realty, Inc.*, 93 P.3d 680, 685 (Idaho Sup. Ct. 2004). Put another way, "[m]ere nonfeasance, even if it amounts to a willful neglect to perform the contract, is insufficient to establish a duty in tort." *Carroll v. United Steelworkers of Am.*, 692 P.2d 361, 363 (Idaho Sup. Ct. 1984).

However, "[i]f the relation of the plaintiff and the defendants is such that a duty to take due care arises therefrom irrespective of contract . . . then the action is one of tort." *Taylor*, 483 P.2d at 669. The Idaho Supreme Court has recognized that an independent duty to disclose may arise when:

> (a) [A] party to a business transaction is in a fiduciary relationship [or other similar relationship of trust and confidence] with the other party; or (b) disclosure would be necessary to prevent a partial or ambiguous statement of fact from becoming misleading; or (c) subsequent information has been acquired which a party knows will make a previous representation untrue or misleading; or (d) a party knows a false representation is about to be relied upon; or (e) a party knows the opposing party is about to enter into the transaction under a mistake of fact and because of the relationship between

**MEMORANDUM DECISION AND ORDER - 9**

> them or the customs of trade or other objective circumstances would reasonably expect a disclosure of the facts.

*Walter v. Krebs*, 962 P.2d 387, 391 (Idaho Sup. Ct. 1998) (quoting *St. Alphonsus Reg'l Med. Ctr. v. Krueger*, 861 P.2d 71, 78 (Idaho Ct. App. 1992)).

The undisputed facts demonstrate that Knife River had no duty independent of the Subcontract. Although Debco maintains that each of the above five factors gives rise to Knife River's duty to disclose, Debco merely restates Knife River's duties under the Subcontract. Debco argues, for example, that Knife River misrepresented "that [it] would strictly comply with the contract specifications" by remaining silent about its breach while performing under the Subcontract. *Debco Opp*. at 14, Dkt. 30. Debco also argues that Knife River's performance caused Debco to "rely[] upon Knife River's misrepresentations that it was complying with the contract specifications." *Id.* at 15. Debco finally asserts that "there was no reason for Debco to have doubted contract compliance . . . ." *Id.*

None of Debco's arguments illustrates any duty independent of the Subcontract. *See Steiner Corp. v. Am. Dist. Tel.*, 683 P.2d 435, 439 (Idaho Sup. Ct. 1984) ("Apart from this contract, ADT could not be said to have a duty . . . . The only duty to which ADT could be held under the facts of this case is that which arose by virtue of the contract obligating it to maintain this fire alarm system."). Thus, Debco's arguments would turn most, if not every, claim for breach of contract into one for fraud, thereby undermining the distinction between contract and tort.

Because the undisputed facts show that Knife River had no duty independent of the Subcontract, the Court will grant Knife River summary judgment on Debco's counterclaim for fraud.

**3.   Debco's Motion to Amend for Punitive Damages**

Debco moves to amend its counterclaim to seek punitive damages. Because punitive damages claims are substantive in nature, Idaho law controls. *See Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005). Idaho Code § 6-1604 governs punitive damages claims, providing:

> In any action seeking recovery of punitive damages, the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted.

Idaho Code § 6-1604(1). The Court has discretion whether to allow a punitive damages claim to proceed. *Vendelin v. Costco Wholesale Corp.*, 95 P.3d 34, 41-42 (Idaho Sup. Ct. 2004). Conduct justifying punitive damages requires both "a bad act and a bad state of mind." *Linscott v. Rainier Nat. Life Ins. Co.*, 606 P.2d 958, 962 (Idaho Sup. Ct. 1980). The offending party must act (1) in extreme deviation from reasonable standards of conduct with an awareness of—or disregard for—likely consequences; and (2) with an extremely harmful state of mind, described variously as with malice, oppression, fraud, gross negligence, wantonness, or willfulness. *See Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 983 (Idaho Sup. Ct. 2004).

To satisfy this burden at trial, the party seeking punitive damages must show, "by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct

by the party against whom the claim for punitive damages is asserted." *See* Idaho Code § 6-1604(1). But on a motion to amend, the party seeking punitive damages need only show "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id.* § 6-1604(2).

Having found summary judgment proper for Knife River on Debco's counterclaim for fraud, the Court approaches the punitive damages inquiry with the recognition that Debco's remaining counterclaim is for breach of contract. Idaho courts are generally reluctant to allow punitive damages for breach of contract, instructing that punitive damages for breach of contract "should be awarded only in the most compelling circumstances . . . cautiously and within narrow limits." *Cuddy Mountain Concrete Inc. v. Citadel Constr. Inc.*, 824 P.2d 151, 158 (Idaho Ct. App. 1992). Given this caution, the Court concludes that no punitive damage claim should be permitted.

Punitive damages for breach of contract require the breaching party to have acted in bad faith or engaged in misconduct that was oppressive, unreasonable, or irrational. *See id.* at 160. Factors relevant to this analysis include: "(1) the presence of expert testimony; (2) whether the unreasonable conduct actually caused harm to the plaintiff; (3) whether there is a special relationship between the parties . . . ; (4) proof of a continuing course of oppressive conduct; and (5) proof of the actor's knowledge of the likely consequences of the conduct." *Id.* at 160-61. While the Court will address each factor, the ultimate question is whether Knife River acted in extreme deviation from reasonable

standards of conduct with a harmful state of mind and a disregard for the likely consequences of its actions. *See id.* at 158-61.

First, the expert testimony factor provides some support to Debco's amendment. Debco's expert is Dale Decker, a civil engineer who has specialized in the asphalt paving industry for approximately 39 years. *Decker Aff.* ¶¶ 2-4, Dkt. 21-7. He opined that Knife River's conduct was "extraordinary and cavalier . . . without question an extreme deviation from reasonable standards of conduct in the paving industry." *Id.* ¶ 28. Knife River has submitted conflicting testimony. The Court need not resolve the parties' conflicting testimony. At this stage, expert testimony provides at least some support for Debco's motion, even if it is contradicted by Knife River's testimony. *See Kuhn v. Coldwell Banker*, 245 P.3d 992, 1004 (Idaho Sup. Ct. 2010) (affirming punitive damages amendment supported by expert affidavit). However, of importance is that Decker only opined as to relevant standards in the paving industry; Decker offers no opinion, and indeed, can offer no opinion, on whether Knife River acted with a harmful state of mind.

Second, the actual harm factor weighs against Debco's amendment. The actual harms Debco experienced were project delays and reduced payments from the FHWA. *Debco Br.* at 14-15, 18, Dkt. 21-1. These harms are simply the expected results of Knife River's breach of the Subcontract and, therefore, are insufficient to warrant punitive damages. Debco also argues that Knife River caused it actual harm by seeking payment for the June 6 to June 20 work delay and liquidated damages. *Debco Br.* at 18, Dkt. 21-1. But the Subcontract permitted Knife River to seek liquidated damages. *Subcontract* at 4,

MEMORANDUM DECISION AND ORDER - 13

Dkt. 22-47. Thus, while Knife River's breach caused Debco actual harm, Debco's harm did not result from "conduct which is unreasonable and irrational in the business context." *Cuddy*, 824 P.2d at 161 (finding actual harm from unreasonable conduct when the breaching party with superior bargaining power abruptly terminated the contract and withheld money for work performed, making the non-breaching party unable to repay its operating loan or obtain credit). As such, this factor weighs against Debco's amendment.

The third factor weighs against Debco's amendment because the parties did not share a special relationship. *See St. Alphonsus Reg'l Med. Ctr. v. Krueger*, 861 P.2d 71, 78 (Idaho Ct. App. 1992) (holding that parties to a commercial contract do not share "a special relationship requiring disclosure").

Fourth, there is little indication of a continuing course of oppressive conduct. Knife River did indicate its intent to "take Debco to the cleaners" after Debco issued a stop-work order. *Knife River Email* Dkt. 21-60. The Court, however, is not persuaded that this is anything more than typical "saber rattling" which often precedes commercial litigation. Thus, this factor does not support Debco's amendment.[2]

---

[2] Debco also points to Knife River's alleged desire to conceal its breach from the FHWA. That desire, if true, does not indicate oppressive conduct towards Debco. *See Hardenbrook v. United Parcel Serv., Co.*, 2009 WL 3530735, at *10 (D. Idaho Oct. 26, 2009) (explaining that the breaching party's oppressive conduct directed at third parties is irrelevant). It is also true that Knife River is unable to produce Brown's personal notebook, and Debco claims that it has been prejudiced as a result. *See Cuddy*, 824 P.2d at 158 (noting that "post-termination revision of the daily work reports" supports punitive damages). But as discussed in Part 4, the Court is not persuaded that the loss of Brown's notebook was willful or that it resulted in significant prejudice.

Finally, a jury might reasonably infer that Knife River knew the likely consequences of its conduct. Decker, Debco's expert, testified that "[p]aving contractors and subcontractors universally understand that the failure to . . . [meet] project specifications is likely to have dire and sometimes disastrous consequences." *Decker Aff.* ¶ 14, Dkt. 21-7. Thus, pavement operators are "extremely cautious to properly calibrate the scales and measuring devices on their plants . . . [and] to know and record precise amounts of each ingredient . . . ." *Id.* ¶ 18. These tasks are "so fundamental that it is a standard in the industry that [paving contractors] double-check their work each day." *Id.* ¶ 20. Nevertheless, Knife River conceded that it "d[id]n't have the means to weigh the lime." *Smith Depo.* at 131, ll. 19-22, Dkt. 23-8. Knife River also conceded that it "didn't have a record onsite to show how much lime was going into the mix." *Brown Depo.* at 124, ll. 13-16, Dkt. 23-9. Based on Knife River's operation, Decker concluded "[n]obody [could] have a reasonable expectation of satisfying the project specifications under the circumstances described." *Decker Aff.* ¶ 29, Dkt. 21-7. For these reasons, a jury could reasonably infer that Knife River knew the likely consequences of its conduct. But, as noted above, the only real consequence of Knife River's conduct is a breach of the Subcontract, which may be fully remedied without exemplary damages. Thus, the fifth factor is, at best, neutral.

After weighing all the factors, the Court finds that Debco has not met its burden to show a reasonable likelihood of proving facts at trial sufficient to support an award of

punitive damages. *See* Idaho Code § 6-1604(2). The Court will therefore deny Debco's motion to amend its counterclaim.

**4.     Motion for Spoliation Sanctions**

Debco seeks spoliation sanctions for Knife River's inability to produce handwritten records of its plant operator, Trevor Brown. In his deposition, Brown testified how he calibrated lime into the asphalt mixture. *Brown Depo.* at 76, ll. 15-23; 78, ll. 2-11, Dkt. 23-9. Brown further testified how he used a personal spiral notebook to record his notes concerning the lime calibration process. He indicated that he was not required to keep these notes, they were not intended for anyone else to review, and they would be largely unintelligible to anyone other than himself. *Affidavit of Trevor Brown*, ¶¶ 7-11, Dkt. 28-2. Because it was his personal notebook, Brown never included it in the project records. *Id.* ¶¶ 15-16.

Knife River promoted Brown to project manager in January 2014. *Id.* ¶ 17. Brown believes he left his notebook in a file cabinet in the control shack. *Id.* ¶ 19. He did not tell Jerry Walker, his successor, about his notebook or suggest that Walker should maintain similar records. *Id.* ¶¶ 17-19. Brown denies destroying or disposing of the notebook. *Id.* ¶ 20. In any event, when Debco sought discovery of Brown's notebook, Knife River was unable to produce it, explaining that it had been lost when Walker took over Brown's position and took over the control shack. *Knife River Reply Br.* at 5, Dkt. 28.

The Court has inherent discretionary authority to make appropriate evidentiary rulings and to levy sanctions in response to spoliation of relevant evidence. *Glover v. BIC*

*Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). A party engages in spoliation as a matter of law if the party had some notice that the evidence was potentially relevant to litigation before its destruction. *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). Bad faith is not required for spoliation sanctions.[3] *See Glover*, 6 F.3d at 1329. Sanctions may instead be imposed on the basis of simple notice of potential relevance to litigation. *See id.* Sanctions may include dismissal of claims, exclusion of evidence, or an instruction that the jury may presume that the destroyed evidence, if produced, would have been adverse to the party who destroyed it. *See Unigard Sec. Ins. Co. v. Lakewood*, 982 F.2d 363, 369 (9th Cir. 1992).

Citing Knife River's inability to produce Brown's notebook, Debco requests that the Court (1) dismiss Knife River's claims for delay damages; (2) exclude certain evidence; and (3) instruct jurors that they may presume Brown's records would have been adverse to Knife River. To determine the severity of sanction to impose for spoliation, the Court must consider the "(1) willfulness or bad faith of the party responsible for loss of evidence; (2) degree of prejudice sustained by opposing party; and

---

[3] The Court notes that recent amendments to the Federal Rules of Civil Procedure impact the propriety of various sanctions when bad faith intent is absent. Fed. R. Civ. P. 37(e), as amended in December 2015, requires a finding of bad faith intent before the Court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Rule 37(e), however, applies only to electronically stored information. It therefore does not impact the Court's inherent sanctioning authority when spoliation of tangible evidence is at issue.

(3) what is required to cure prejudice." *Miller v. Four Winds Int'l Corp.*, 827 F. Supp. 2d 1175, 1181 (D. Idaho 2011). The Court will address each factor below.

The first issue to consider is whether Knife River's inability to produce Brown's notebook constitutes willful or bad faith spoliation. The Court is not persuaded that Knife River's conduct was willful or done in bad faith. Knife River notified Debco that it planned to file suit at least 5 months before Brown's notebook was lost, and it was therefore on notice of foreseeable litigation, even though this action was not filed until some time later. However, there is no indication that anyone at Knife River, other than Brown, knew anything about Brown's notebook until the fact of its existence arose for the first time in Brown's deposition. More importantly, there is no indication that Brown's notebook was intentionally destroyed. Rather, the record strongly suggests that Brown's notebook was simply lost or inadvertently destroyed when Walker took over Brown's office. For these reasons, the Court is unwilling to find that the loss of Brown's notebook was willful or that Knife River acted in bad faith.

The second inquiry is whether Knife River's inability to produce Brown's notebook prejudiced Debco. While Brown's notebook may be relevant, it is not clear how prejudicial its loss is. There is no dispute that Knife River's lime mixture did not meet the Subcontract's requirements and, for that reason, the Court has granted summary judgment to Debco on that issue. Beyond that issue, Debco argues that Brown's notebook would have been relevant to its fraud and punitive damage claims because it may establish Knife River's "state of mind" in manufacturing and installing the defective

asphalt. However, it is not at all clear how probative Brown's cryptic hand-written notes would be to establish Knife River's state of mind. It would instead seem that deposition testimony of Knife River's employees would be far more probative on that issue. Moreover, as discussed above, the Court has concluded that this is nothing more than a garden-variety contract dispute and, accordingly, has granted summary judgment on Debco's fraud claim and denied Debco's motion for leave to pursue a punitive damages claim.

Since the Court has concluded that Knife River's conduct was not willful and that any prejudice to Debco is minimal, it concludes that no sanction is necessary or appropriate.

**5.     Knife River's Motions to Strike**

Knife River filed two motions seeking to strike paragraphs from the affidavits of Lonnie Simpson, Jaime Edelmayer, Chuck Martinez, and Jim Penzkover. Dkts. 29-1, 36-1. Given the rulings in this Order, both motions are now moot. The Court did not rely on the disputed paragraphs of these affidavits in any way.

## ORDER

**IT IS ORDERED:**

1.     Defendant-Counterclaimant's Motion for Extension of Time to File Disputed Material Facts (Dkt. 38) is **GRANTED**.

2.     Defendant-Counterclaimant's Motion for Partial Summary Judgment (Dkt. 22) is **GRANTED in part,** and **DENIED in part**.

3. Plaintiff-Counterdefendant's Motion for Partial Summary Judgment (Dkt. 24) is **GRANTED**.

4. Defendant-Counterclaimant's Motion to Amend its Counterclaim to Seek Punitive Damages (Dkt. 21) is **DENIED.**

5. Defendant-Counterclaimant's Motion for Spoliation Sanctions (Dkt. 23) is **DENIED.**

6. Plaintiff-Counterdefendant's two Motions to Strike (Dkts. 29, 36) are **DENIED as MOOT.**

DATED: March 9, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court